UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JERLENE PRYOR                                          CASE NO. 02-15429

JERLENE PRYOR                                                 PLAINTIFF

VERSUS                                                        ADV. PROC. NO. 06-1070

ANDRE DEBERRY, et al.                                         DEFENDANTS

AND

SAFEWAY INSURANCE COMPANY                                     DEFENDANT/COUNTER-PLAINTIFF

VERSUS

JERLENE PRYOR, et al.                                         COUNTER-DEFENDANTS

OPINION

On consideration before the court is a motion for summary judgment and a motion seeking the adjudication of the rights of the parties hereto, both filed by Safeway Insurance Company, (Safeway); responses to said motions having been filed by the plaintiff/debtor, Jerlene Pryor, (Pryor); also before the court is a motion filed by the Chapter 7 trustee requesting a determination that a state law cause of action initiated by Pryor against Safeway is an asset of this bankruptcy estate; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (O).

II.

## CHRONOLOGY OF MATERIAL FACTS

On April 10, 2002, Pryor filed a cause of action in the Circuit Court of Marshall County, Mississippi, Cause No. M2002-159, styled <u>Jerlene Pryor v. Andre DeBerry, Individually, and Willie E. Bean, Individually, d/b/a DeBerry and Bean Insurance Agency, and Safeway Insurance Company</u>. Pryor asserted contractual and extra-contractual claims as a result of her being denied coverage under an automobile insurance policy issued by Safeway.

On September 4, 2002, Pryor filed a voluntary Chapter 7 bankruptcy petition. She thereafter failed to disclose the aforementioned state court cause of action in Schedule B., her listing of personal property assets, as well as, in her Statement of Financial Affairs. On Schedule B., the debtor is required to list under Paragraph 20, "other contingent and unliquidated claims of every nature, including tax refunds, counter-claims of the debtor, and rights to set-off claims." On the Statement of Financial Affairs, the debtor is required to list under Paragraph 4, entitled "Suits and Administrative Proceedings, Executions, Garnishments, and Attachments," the following:

> "a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."

While the debtor did disclose certain causes of action that had been filed against her, she omitted the cause of action that she had already filed against Safeway. Pryor's Schedules and Statement of Financial Affairs were executed on September 23, 2002, with a declaration that they were being signed under penalty of perjury.

On September 20, 2002, sixteen days after filing her bankruptcy petition and only three days prior to executing her Schedules and Statement of Financial Affairs, Pryor's deposition was taken for discovery purposes in the state court cause of action. When asked about filing bankruptcy, the following exchange took place between Pryor and Safeway's attorney who was questioning Pryor, to-wit:

> Q. Okay, have you filed bankruptcy or anything?
>
> A. I'm in the process of that.
>
> Q. You haven't actually filed the petition for bankruptcy yet?
>
> A. I have went and talked with someone about it.
>
> Q. Okay. All right. But you haven't done it yet? I mean, you haven't actually filed bankruptcy yet?
>
> A. I haven't went to court for it yet.

At the §341(a) first meeting of creditors held in conjunction with Pryor's bankruptcy case on November 14, 2002, Pryor responded under oath to the following questions which were asked by her bankruptcy attorney, to-wit:

> Q. And you furnished me with information that you used to prepare your schedules, did you not?
>
> A. Yes Sir.

3

> Q. Now when you looked those over and signed them to the best of your knowledge, were they correct?
>
> A. Yes Sir.
>
> Q. Do you anticipate receiving any lump sums of money by way of lawsuit or inheritance in the next six months?
>
> A. No Sir.

Thereafter, Pryor's bankruptcy was administered as a "no asset" case. She received a discharge on January 31, 2003, and the case was closed.

On February 23, 2004, Safeway's attorneys discovered that Pryor had actually filed bankruptcy through a Pacer inquiry. Immediately thereafter, Safeway removed the state court cause of action to the United States District Court for the Northern District of Mississippi. As an integral part of the removal proceedings, Safeway asserted that Pryor's state court cause of action should be precluded because of the doctrine of judicial estoppel since she had failed to disclose the cause of action in her bankruptcy schedules over a year earlier. On April 16, 2004, Pryor filed a motion to remand.

On April 27, 2004, Pryor filed a motion to reopen her bankruptcy case. The motion stated that Pryor had "mistakenly failed to list certain assets in her bankruptcy petition and that she should be entitled to amend her schedules accordingly." Significantly, the motion to reopen was not noticed to Safeway even though Safeway had already raised the judicial estoppel defense in the district court because of Pryor's disclosure failures when her bankruptcy case was initially pending.

Once the bankruptcy case was reopened, rather than amend her schedules to disclose the cause of action against Safeway, Pryor's attorneys elected to file a motion to dismiss the

4

bankruptcy case and vacate Pryor's discharge. Pryor's attorneys candidly acknowledged to this court at a recent hearing that this change in strategy was undertaken because they had become aware of the decision of the Fifth Circuit Court of Appeals in In the matter of: Superior Crew Boats, Inc., 374 F.3d 330 (5th Cir. 2004), which will be discussed subsequently herein. The motion to dismiss and vacate again was not noticed to Safeway which certainly had an interest in what was occurring in the bankruptcy court. The motion, however, was noticed to the case trustee, the Office of the U.S. Trustee, and Pryor's creditors who had been initially scheduled in the case. Regardless, because none of these parties were yet aware of Pryor's cause of action against Safeway and its potential value, there were no objections to the motion. Consequently, an order was entered on June 21, 2004, vacating Pryor's discharge and dismissing the case.

The aforesaid dismissal order also included the phrase, "as if the Debtor never filed bankruptcy." Having to sign and process literally hundreds of orders each week, the court did not "catch" the use of this gratuitous language which, in actuality, is highly inaccurate. Pryor remained under the protection of the bankruptcy court for several months enjoying the benefits of the automatic stay. According to her Statement of Financial Affairs, Paragraph 4, at least three garnishment proceedings and a potential levy by the Internal Revenue Service were halted. She obtained a Chapter 7 discharge which remained in effect from January 31, 2003, until the June 21, 2004 order was entered. Since little or no collection activities have been taken against her subsequent to the vacating of her discharge, it is apparent that because the discharge was in effect for over sixteen months that her creditors were lulled into a sense of complacency. Consequently, the filing of the bankruptcy case provided extremely positive results for Pryor. To characterize it as something that never happened is completely erroneous.

5

Pryor's attorneys then presented the bankruptcy court order of dismissal to the district court, and the case was remanded to the Circuit Court of Marshall County, Mississippi. This court is not aware of whether the district court was ever apprised that Safeway was not noticed of any of the events that had just transpired in the bankruptcy court.

Safeway has now reopened Pryor's bankruptcy case for a second time, requesting this court to clarify the effect of the aforementioned June 21, 2004 order. Safeway has removed the state court lawsuit to this court and has filed a motion for summary judgment requesting this court to apply judicial estoppel to preclude the state law cause of action because Pryor never disclosed at any time, when her bankruptcy case was initially pending or when it was reopened, that she had a claim against Safeway.

The Chapter 7 trustee filed a motion to have this court determine that Pryor's state court cause of action is an asset of the bankruptcy estate.

II.

Pryor initially asserted that Safeway has no standing to reopen this bankruptcy case to request a clarification of this court's earlier order. For the reasons set forth hereinbelow, this court finds that Pryor's argument is misplaced.

Immediately after learning that Pryor had actually filed a bankruptcy case, Safeway removed the state court cause of action to the United States District Court and raised the judicial estoppel defense before Pryor reopened her bankruptcy case. The reopening by Pryor was clearly an effort to overcome the preclusive effects of judicial estoppel. Yet, there was no notice to Safeway that the bankruptcy case was being reopened and no notice to Safeway when the motion was filed to dismiss the case and vacate Pryor's discharge. Pryor now argues that Safeway had

6

"no standing" to be apprised of these events which were calculated purposely to negate Safeway's affirmative defense. Fundamental due process and fairness dictate otherwise.

Had Safeway been noticed, it is highly unlikely that the order of dismissal would have been so quickly entered or that the language "as if Debtor had never filed bankruptcy" would have been included therein. Safeway obviously has standing to come back into this court to seek a clarification of this order because its position and rights as a defendant in Pryor's lawsuit were significantly impacted by its entry.

The most glaring aspect of all of this is that Pryor's attorneys never amended her Schedules and Statement of Financial Affairs so that the Office of the U.S. Trustee, the case trustee, and Pryor's creditors could know that there was a potential asset that could be brought into her bankruptcy estate. In the opinion of this court, the act of having Pryor's case dismissed and her discharge vacated without disclosing this potential asset was clearly a "fast and loose" tactic. It is extremely difficult for the Office of the U.S. Trustee, the case trustee, and the estate's creditors to police a bankruptcy case when the debtor's attorneys are not being fully candid with the court.

III.

Pryor's cause of action against Safeway was conceivably valuable enough to fully satisfy all of Pryor's creditors. Indeed, Pryor's non-bankruptcy attorney sent a letter to Safeway's attorneys demanding $200,000.00 as a final offer to settle the lawsuit. Pryor had several opportunities to inform the court, the case trustee, and her creditors that she had this cause of action. Her opportunities to disclose her bankruptcy filing and the existence of the lawsuit are set forth as follows:

a. Pryor failed to disclose her contingent and unliquidated claim on Schedule B., her listing of personal property assets.

b. Pryor failed to list the cause of action in Paragraph 4 of her Statement of Financial Affairs which requires a debtor to list all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of the bankruptcy case. There is no exception to this disclosure if the debtor is the plaintiff in a lawsuit rather than the defendant.

c. Pryor failed to disclose the cause of action at her §341(a) first meeting of creditors when she was asked by her attorney whether she anticipated receiving any lump sums of money <u>by way of lawsuit</u> or inheritance in the next six months. Pryor's recent explanation for this answer was that she did not expect her lawsuit against Safeway to be resolved within the next six months. While this explanation is technically truthful, the lawsuit could well have been resolved the very next day. The fact that it was pending clearly should have been revealed.

d. Pryor's responses at her deposition, taken only sixteen days after she had filed her voluntary Chapter 7 petition and within three days before she executed her bankruptcy Schedules and Statement of Affairs, could best be described as evasive. She had seen her bankruptcy attorney on two occasions and had actually filed her petition, but she never directly answered Safeway's attorney as to whether she had filed a bankruptcy case.

e. In the first motion to reopen Pryor's bankruptcy case, her attorney indicated in the motion that Pryor had mistakenly failed to list certain assets and that she desired to amend her Schedules accordingly. As noted hereinabove, the Schedules and Statement of Financial Affairs were never amended. The case was quickly dismissed and Pryor's discharge was vacated in an admitted effort to avoid the judicial estoppel defense raised by Safeway in the district court. Safeway never had an opportunity, since it was not noticed, to voice an objection to these surreptitious tactics. This also occurred in the absence of the court, the case trustee, the Office of the U.S. Trustee, and Pryor's creditors being apprised of her cause of action.

f. Tellingly, Pryor acknowledged in her testimony at a recent hearing that she was aware that after the first reopening that her bankruptcy case was going to be dismissed and her discharge vacated. Although she did not comprehend the technical implications, she knew that this was being undertaken because of the lawsuit against Safeway.

Pryor contends that the non-disclosures, the evasive responses, and the surreptitious tactics were all inadvertent. This court could not disagree more.

IV.

Insofar as judicial estoppel is concerned, Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3rd Cir. 1988), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), provides the following overview:

> We are also mindful of the equitable concept of judicial estoppel. This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation. Scarano v. Central Railroad Co., 203 F.2d 510 (3rd Cir. 1953); USLIFE Corp. v. U.S. Life Insurance Co., 560 F.Supp. 1302 (N.D. Tex. 1983).
> We conclude that Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect. Although we stop short of finding that, as the bank urges, Oneida's prior silence is equivalent to an acknowledgement that it did not have a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.
>
> Id. at 419.

The Fifth Circuit expressly recognized the doctrine of judicial estoppel in Ergo Science, Inc. v. Martin, et al, 73 F.3d 595 (5th Cir. 1996), as follows:

> Viewed in this light, the issue is more akin to judicial estoppel. The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993), cert. denied, 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). We recognize the applicability of this doctrine in this circuit because of its laudable policy goals. The doctrine prevents internal inconsistency, precludes litigants from "playing fast and loose" with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment.

73 F.3d 595 at 598.

9

In the <u>Matter of Coastal Plains, Inc.</u>, 179 F.3d 197 (5th Cir. 1999), Judge Rhesa Barksdale, writing for the court, provided the following comments:

> Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position". <u>Brandon v. Interfirst Corp.</u>, 858 F.2d 266, 268 (5th Cir. 1988). [FN1] The purpose of the doctrine is "to protect the integrity of the judicial process", by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest". <u>Id.</u> (internal quotations marks, parentheses, and citation omitted). [FN2] Because the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. See Matter of Cassidy, 892 F.2d 637, 641 & n. 2 (7th Cir.), <u>cert. denied</u>, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). [FN3]

179 F.3d at p. 205.

> It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*. 11 U.S.C. §521(1) ("The debtor shall-(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs"). "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action". <u>Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n</u>, 932 F.Supp. 859, 867 (E.D. Tex. 1996). " 'The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information...prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed' ". <u>Id.</u> (brackets omitted; quoting <u>Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)</u>, 183 B.R. 812, 821 n. 17 (Bankr. N.D. Ill. 1995)). *"Any claim with potential must be disclosed*, even if it is 'contingent, dependent, or conditional"'. <u>Id.</u> (quoting <u>Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.</u>, 157 B.R. 100, 103 (S.D. Tex. 1993)) (emphasis added).

<u>Id.</u> at p. 207 - 08.

> Our review of the jurisprudence convinces us that, in considering judicial estoppel *for bankruptcy cases*, the debtor's failure to satisfy its statutory disclosure duty is "inadvertent" only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment. [FN9]

<u>Id.</u> at p. 210.

10

Coastal's claimed "inadvertence" is not the type that precludes judicial estoppel against plaintiffs, as Coastal's successors, from asserting in the instant litigation the previously nondisclosed claims; Coastal both knew of the facts giving rise to its inconsistent positions, *and* had a motive to conceal the claims.

Id. at p. 212.

In a more recent opinion discussing judicial estoppel, In the Matter of: Superior Crewboats, Inc., 374 F.3d 330 (5th Cir. 2004), Judge Edith Jones indicated that the Fifth Circuit recognized three requirements which were applicable to the theory of judicial estoppel: (1) The party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent. 374 F.3d 330 at p. 335.

Addressing the inadvertence requirement, which is critical in the proceeding now before this court, Judge Jones provided the following guidance:

> Third and last, the Hudspeaths' non-disclosure of a viable personal injury claim was not inadvertent. "[T]he debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." Coastal Plains, 179 F.3d at 210 (emphasis in original). Neither consideration exculpates the Hudspeaths in this instance. The Hudspeaths certainly had knowledge of the undisclosed claim, initiating the suit only months after filing for bankruptcy and requesting service of process during the pendency of the bankruptcy petition. Still, the couple remained silent until months later. When Mrs. Hudspeath finally informed the bankruptcy trustee about the suit, she wrongly identified it as prescribed. The Hudspeaths' argument that there was confusion as to whether the Louisiana or maritime limitations period controlled is of no moment. The Hudspeaths were aware of the facts underlying the claim and their continuing obligation to disclose its existence to the court. Alleged confusion as to a limitations period does not evince a lack of knowledge as to the existence of the claim [FN4] The district court's conclusion that a fact issue existed concerning the debtor's wrongful intent was thus incorrect.

374 F.3d at p. 335 - 36.

> The Hudspeaths had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim without having

11

> disclosed it to the creditors. Such a result would permit debtors to "[c]onceal their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights." Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993). Accordingly, the Hudspeaths cannot be permitted, at this late date, to re-open the bankruptcy proceeding and amend their petition. Judicial estoppel was designed to prevent such abuses. See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002) ("Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them.")

Id. at p. 336.

> For the foregoing reasons, we reverse the decision of the district court and conclude that judicial estoppel bars the personal injury suit as a matter of law. The judicial estoppel determination obviates the need to address Superior's Rule 17(a) arguments and renders moot the trustee's claim to substitute as plaintiff for the debtors. The case must be remanded with instructions to dismiss the Hudspeaths' claim.

Id.

## V.

Looking to the three requirements enunciated in the Superior Crewboats decision, this court makes the following findings:

(1) The fact that Pryor did not disclose her cause of action against Safeway at any time during the administration of her bankruptcy case is clearly inconsistent with pursuing that cause of action at the present time.

(2) Because the Chapter 7 trustee had no notice of Pryor's cause of action and did not attempt to assert a claim against it as an asset of the bankruptcy estate, the court was obviously compelled to accept the proposition that Pryor had no cause of action since this was the position that she presented to the court.

(3)  Insofar as inadvertence is concerned, the court was initially inclined to believe that Pryor had no idea that she was required to disclose in her Bankruptcy Schedules and Statement of Financial Affairs that she had a substantial claim against Safeway. The court thought that she may have been the victim of being inadequately advised by her first bankruptcy attorney and then subsequently the victim of the less than candid tactics orchestrated by her second bankruptcy attorney and the non-bankruptcy attorney handling the claim against Safeway. However, following the examination of Pryor's deposition testimony, as well as, the excerpt from the testimony at her §341(a) first meeting of creditors hearing, the court now sees a pattern of evasive answers and "misrepresentations by omission" that were perpetrated by Pryor. Pryor's explanations for this pattern of conduct at the most recent hearing was equally unsatisfactory. The court has no doubt that she was fully aware of the lawsuit during the several opportunities that she had to disclose its existence, but chose not to do so. The motive to conceal this potential asset from her creditors is equally apparent. Consequently, this court believes that Pryor's non-disclosures were not inadvertent.

An excerpt from the sworn affidavit of Pryor's first bankruptcy attorney underscores this conclusion, to-wit:

> ". . . . . . . I was the attorney for Jerelene James Pryor when she filed a Chapter 7 bankruptcy petition through my office. The procedure which I used when I was handling bankruptcy cases was to have my secretary interview the client and Ms. Pryor was asked all the questions contained in that petition, including whether or not she had any lawsuits going. The only lawsuit she mentioned was the one which had lead to a garnishment

on her wages, which I removed pursuant to the automatic stay provisions of the bankruptcy code.

Further, at the 341 Creditors' Meeting, I never attended one in which the Trustee failed to ask the Debtor whether or not there were any ongoing lawsuits where he or she expected to receive money. Although I can't remember the meeting for any particular individual, I would be shocked if Ms. Pryor was not asked that question and if she did not answer it in the negative. Otherwise, the Trustee would have taken action to file the appropriate procedures for ongoing lawsuits."

## VI.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Phillips v. OKC Corp., 812 F.2d 265 (5th Cir. 1987); Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.29 265 (1986); Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291 (5th Cir. 1987), Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." Phillips, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." Phillips, 812 F.2d at 272.

14

VII.

The court is of the opinion that there are no material facts remaining in dispute in this proceeding. Safeway has established that the theory of judicial estoppel should preclude Pryor from continuing her cause of action against Safeway and the other adversary defendants. As such, Safeway's motion for summary judgment will be sustained and the cause of action will be dismissed by a separate order. This decision likewise resolves Safeway's separate motion for clarification.

Consistent with the holding of In the Matter of: Superior Crewboats, Inc., supra, the judicial estoppel determination renders moot the Chapter 7 trustee's claim to assert this lawsuit for the benefit of the bankruptcy estate. His motion will likewise be overruled by the aforesaid separate order.

This the 14th day of April, 2006.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE